IN THE MATTER OF THE SWORN APPLICATION OF JULIA TIENE AND OTHER FREEHOLDERS OF THE CITY OF JERSEY CITY IN THE COUNTY OF HUDSON FOR A SUMMARY INVESTIGATION INTO THE MUNICIPAL EXPENDITURES OF THAT CITY.

IN THE MATTER OF THE CONTEMPTS OF JOSEPH COMPARETTO, BERNARD F. KENNY, ANTHONY J. MASCOLO AND GEORGE J. MASUMIAM, DEFENDANTS-APPELLANTS.

Argued November 15, 1954—Decided December 20, 1954.

See also 29 *N. J. Super.* 172, 102 *A. 2d* 77.

*Mr. Maurice C. Brigadier* argued the cause for the appellants (*Mr. John G. Flanigan,* attorney; *Mr. Seymour Margulies,* on the brief).

*Mr. Joseph M. Nolan* argued the cause for the State (*Mr. Samuel A. Larner,* on the brief).

The opinion of the court was delivered by

VANDERBILT, C. J.  I.  On March 27, 1953 the Honorable Haydn Proctor, assignment judge of the Superior Court in Hudson County, on application of certain freeholders of Jersey City, commenced a summary investigation into the affairs of that municipality pursuant to the provisions of *R. S.* 40:6–1. In *Tiene v. Jersey City,* 13 *N. J.* 478 (1953), we upheld his order directing the investigation.  In accordance with the provisions of *R. S.* 40:6–2, as amended *L.* 1953, *c.* 37, Judge Proctor appointed Mr. Samuel A. Larner as the expert to conduct the investigation, and on May 13, 1953 he appointed Mr. Joseph M. Nolan as attorney to assist Mr. Larner.  At the same time he signed an order directing the Clerk of the Superior Court to issue subpoena to such persons as the expert should designate during the course of the investigation.

On January 22, 1954 each of the four defendants was served with one or more subpoenas *duces tecum* commanding him to appear before the expert on January 27, 1954 in connection with the pending investigation of the affairs of the City of Jersey City.  All the subpoenas were issued over the signatures of "I. Grant Scott, Clerk," and "Joseph M. Nolan, attorney for and of counsel with Samuel Larner."  Mr. Nolan had signed both names to the subpoenas in accordance with the long established practice in this State. . Prior to the return date of the subpoenas, Bernard F. Kenny, one of the defendants, moved to quash the subpoenas served upon him, and as a result his appearance before the expert was adjourned

by stipulation until the motion could be disposed of by the court. The remaining defendants, Mascolo, Masumiam and Comparetto, appeared on the return date, but refused to be sworn or to testify. At the same time they also served a motion to quash the subpoenas served upon them. After hearing argument on their motion Judge Proctor denied the motions of Mascolo, Masumiam and Comparetto to quash the subpoenas and on February 23, 1954 signed an order to that effect, and in his order he directed them to appear on March 2, 1954 before the expert in compliance with the subpoenas. These appearances were adjourned until the court disposed of the defendant Kenny's motion to quash his subpoenas. On March 11, 1954 Judge Proctor denied Kenny's motion and ordered him to appear before the expert on March 23, 1954 in compliance with the subpoenas previously served upon him.

On March 12, 1954 all four defendants filed notices of appeal from these orders to the Appellate Division of the Superior Court. Subsequently they also sought stays from the Appellate Division pending the appeals. Counsel agreed in writing that the date of appearance for all defendants before the expert would be adjourned until March 30, 1954, with the understanding that if the motion for stays were in the meantime denied by the Appellate Division the defendants would appear before the expert on that date. On March 29, 1954 the Appellate Division denied the motions for stays and subsequently the appeals were dismissed by the Appellate Division, apparently on the ground that the orders appealed from were interlocutory and the appeals were therefore prematurely brought.

On March 30, 1954 the four witnesses failed to present themselves before the expert. At the same time they caused to be delivered to him letters written by them advising that they refused to comply with the order of the court until the appeals from the orders of February 23 and March 11 were decided by the Appellate Division. Thereupon the expert reported these facts to Judge Proctor and applied for the issuance of bench warrants to compel these witnesses to appear

and testify. Judge Proctor signed the warrants, but prior to the service of the warrants on the defendants they voluntarily appeared before the judge, all except Kenny being represented by counsel. Each took the stand and was questioned as to his failure to appear before the expert, and as to his intentions to testify. Each admitted that in refusing to comply with the subpoenas and court order hereinbefore mentioned to appear before the expert he had acted contrary to his attorney's advice, but indicated his willingness to appear and testify before the expert in the future. Each of the defendants was informed in open court that he was charged with contempt for failure to comply with the subpoenas and with failure to obey the court order to appear and produce books, and the judge notified each to appear on April 6, 1954 for a hearing of the contempt charge. On April 1, 1954 an order was signed by Judge Proctor directing each of the four defendants to show cause before the court on April 6, 1954 why he should not be adjudged guilty of contempt of court for his failure to obey his subpoenas and the order of the court. A copy of that order to show cause was served upon each defendant, and pursuant thereto all four defendants appeared with counsel in court on April 6, 1954 before Judge Proctor. Since the alleged contempt involved orders signed by him, Judge Proctor refused to hear the matter and assigned it to Judge McGeehan, R. R. 4:87–2(e).

After several adjournments the four defendants appeared before Judge McGeehan on June 10, 1954 with their counsel. The judge read the order to show cause in open court, each defendant signified that he understood fully the nature of the charge and of the proceedings, and each pleaded not guilty. Mr. Nolan, the attorney appointed to prosecute the contempt, called as witnesses the process server, who testified that he had served subpoenas upon each of the defendants, and the attorney for Jersey City, who testified as to the nonappearance of the defendants before the expert on March 30, 1954. The prosecutor introduced into evidence the original subpoenas, the orders of Judge Proctor dated February 23 and March 11, alleged to be contemned, and the letters

written by the defendants to the expert advising him of their decision not to appear before him on March 30. On the defendants' case all four took the stand and admitted their failure to comply with the court orders directing their appearance before the expert. Each admitted that in doing so he had acted contrary to the advice of counsel, who had told him that by failing to appear he might be subject to being held in contempt of court.

The court, sitting without a jury, found all four defendants guilty of criminal contempt and fined each $50. It is from these judgments that the defendants appealed, and we certified the appeals on our own motion while they were pending in the Appellate Division of the Superior Court.

## II

The defendants assert that only Judge Proctor has the power to issue subpoenas, that this power cannot be delegated, and that therefore the issuance of the subpoenas here in question by Mr. Nolan in the name of the clerk of the Superior Court was an invalid act and that the court orders directing the defendants to appear before the expert based upon such defective process were invalid. Preliminarily it is to be noted that as a general rule a party cannot on an appeal from a judgment of conviction of contempt assert that the court order which he had contemned was based on error of law or fact, but rather the contemner's recourse is to take a direct appeal from the court order, *Forrest v. Price,* 52 *N. J. Eq.* 16, 23 (*Ch.* 1893), affirmed 53 *N. J. Eq.* 693 (*E. & A.* 1895); *Oddo v. Saibin,* 106 *N. J. Eq.* 453, 463 (*Ch.* 1930); *In re Roberts,* 133 *N. J. Eq.* 122, 124 (*Ch.* 1943); *Whippany Paperboard Co. v. Local No.* 301, 11 *N. J.* 153, 167 (1952). On the other hand, if the court was without jurisdiction over the subject matter or the parties, the person charged with the contempt may raise the question of lack of jurisdiction on appeal from the judgment of conviction of contempt, *Dodd v. Una,* 40 *N. J. Eq.* 672, 706 (*E. & A.* 1885); *Forrest v. Price, supra,* 52 *N. J. Eq.* 16, 23; *Kemp-*

*son v. Kempson,* 63 *N. J. Eq.* 783, 784 (*E. & A.* 1902); see *Annotation,* 12 *A. L. R. 2d* 1059, 1066. Regardless of this, however, the defendants' appeals from these orders were dismissed by the Appellate Division of the Superior Court as premature because the orders were not final, *R. R. 2:2–1.* To prohibit the defendants from raising the question of the validity of these orders at this time would be to deprive them of any judicial review of these orders. We will therefore permit the question to be raised on this appeal. See *Massett Building Co. v. Bennett,* 4 *N. J.* 53, 63 (1950); *Midler v. Heinowitz,* 10 *N. J.* 123, 129 (1952); *In re Roberts, supra,* 133 *N. J. Eq.* 122; *N. J. Const.* 1947, *Art.* VI, *Sec.* V, *par.* 2; *Nelson v. U. S.,* 201 *U. S.* 92, 26 *S. Ct.* 358, 50 *L. Ed.* 673 (1906); *Alexander v. U. S.,* 201 *U. S.* 117, 26 *S. Ct.* 356, 50 *L. Ed.* 686 (1906); *Perlman v. U. S.,* 247 *U. S.* 7, 38 *S. Ct.* 417, 62 *L. Ed.* 950 (1918); *Cobbledick v. U. S.,* 309 *U. S.* 323, 60 *S. Ct.* 540, 84 *L. Ed.* 783 (1940); *Jarecki v. Whetstone,* 192 *F. 2d* 121 (*C. A.* 7, 1951).

▮▮▮ *R. S.* 40:6–3, as amended *L.* 1953, *c.* 37, provides that in connection with the summary investigation into the affairs of any municipality or county the judge may:

"(a) exercise the subpoena powers of and out of the Superior Court, upon his own motion or upon application of such attorney as may have been designated by the judge to conduct such investigation or to prepare and present the evidence on the part of the applying freeholders; and may enforce such subpoenas in similar manner as in civil actions in the Superior Court; * * *."

On May 13, 1953 Judge Proctor signed an order directing that the Clerk of the Superior Court "shall from time to time issue process of subpoena and process of subpoena *duces tecum* for such witness or witnesses to appear before Samuel A. Larner, Esq., as shall be designated by Samuel A. Larner, at times and places named in said subpoena, as provided in *R. S.* 40:6–3." This order was entered on the application of the expert in order to permit the due appearance of the witnesses in the course of the investigation without the necessity of applying to Judge Proctor for the issuance of each

subpoena. The order was clearly within the power of the judge, granted by the statute, to "exercise the subpoena powers of and out of the Superior Court." If the Legislature had intended that the judge must personally sign each subpoena it would have so provided. Rather the Legislature intended to grant the subpoena power to the judge supervising the investigation, but the manner in which the subpoenas are to be issued was left to the discretion of the judge. The order, which in effect grants the power of issuance of subpoenas to the expert, follows the long standing procedure in our law courts whereby an attorney issues the subpoena in the name of the clerk of the court, *R. R.* 4:46–1, 2 *Waltzinger, N. J. Practice* 449, 1 *Bradner, N. J. Law Practice* 172 (1940). As stated in *Massett Building Co. v. Bennett, supra,* 4 *N. J.* 53, 63, "in general, the established course of conduct in municipal investigations follows accepted judicial procedure." The subpoenas in question were properly signed and issued by the expert through his legal assistant, Mr. Nolan, in accordance with the order signed by Judge Proctor.

█ The defendants also argue that the contempt proceedings were defective and deprived them of their constitutional guaranty of a fair trial in that at the hearing of March 31, 1954 before Judge Proctor they were forced to testify and thus to convict themselves in violation of their privilege against self-incrimination. They likewise claim that they were placed in jeopardy at the hearing on March 31, 1954 and that to bring them to trial again before Judge Mc-Geehan constituted double jeopardy. These arguments are based upon the erroneous premise that at the hearing on March 31, 1954 they were actually placed on trial for contempt. At that hearing the defendants, who appeared voluntarily before Judge Proctor, were questioned solely for the purpose of determining whether the facts justified the initiation of a contempt proceeding. The testimony taken at that hearing was not used at the trial of the defendants before Judge McGeehan, and clearly the defendants were never placed in jeopardy at that time, *In re Jeck*, 26 *N. J. Super.* 514 (*App. Div.* 1953), certification denied 13 *N. J.* 429

(1953). The proceedings were merely used as a foundation for the issuance of the order to show cause.

The defendants contend that they were not informed with certainty as to the charge against them. In any proceeding for contempt not committed in the actual presence of the court the contemner must be fairly informed in advance of the trial of the essential elements of the charge against him, *State v. Chaffman*, 15 *N. J. Super.* 492, 498 (*App. Div.* 1951); *Eberhardt v. Eberhardt*, 21 *N. J. Super.* 352, 355 (*App. Div.* 1952). He must be afforded ample opportunity to challenge the truth of the charges and a fair opportunity to deny or confess their truth, *In re Frank*, 135 *N. J. L.* 429, 432 (*Sup. Ct.* 1947). The notice here was more than sufficient and the defendants had ample time to prepare their defense. They admit that on March 30, 1954, when they failed to comply with the court order, they were aware that they were running the risk of being held in contempt of the court. During the course of the hearing on March 31, 1954 Judge Proctor and the expert notified all four defendants, three of whom were represented by counsel, of the charge against them. Five days prior to the original trial date set by Judge Proctor an order to show cause, setting forth the charges against them, was served upon each defendant. At the trial Judge McGeehan read the order to show cause to the defendants, all of whom were then represented by counsel, heard their statements that they understood the charge, and accepted their pleas of not guilty. The issue was simply whether there had been a willful disobedience of the court's order constituting contempt. Clearly the defendants were at all times aware of the charge and were given ample opportunity to defend themselves.

The defendants maintain that the prosecution failed to prove the existence of the element of intent to disobey the court order. The evidence was uncontradicted, however, that the defendants deliberately and willfully refused to comply with the court order, and in fact did so with full knowledge that they were liable to be held in contempt. It is obvious that their failure to appear was deliberate and inten-

tional, *In re Frank, supra,* 135 *N. J. L.* 429, 434; *State v. Adamo,* 9 *N. J. Super.* 7, 10 (*App. Div.* 1950), certification denied 5 *N. J.* 482 (1950).

Finally, the defendants claim that the court failed to comply with *R. R.* 4:87–3 requiring that the court determine whether the contempt was civil or criminal, arguing that although the court did state that the charge was criminal contempt this decision was not "an independent judicial determination," but rather resulted from a decision by Mr. Nolan. There is absolutely no basis for such an assertion since it clearly appears that the trial court did determine that this was a criminal contempt.

The orderly processes of the administration of justice are necessarily dependent on full compliance with all lawful orders of the courts. To prevent recalcitrant individuals from frustrating their work, the courts are necessarily empowered to punish for contempt. Here the defendants, acting contrary to the advice of their counsel, deliberately flouted the lawful subpoenas and orders of the courts. The courts accordingly have no choice, if they are to do their duty in administering justice, but to punish the defendants for their misconduct.

The judgments below are affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, BURLING, JACOBS and BRENNAN—5.

*For reversal*—Justices HEHER and WACHENFELD—2.