122 N.J. Super. 479 (1973)
300 A.2d 868
IN THE MATTER OF MICHAEL CALLAN, HARRIS DAVID AND GERALD CLARK CHARGED WITH CONTEMPT OF COURT.
Superior Court of New Jersey, Chancery Division.
Decided January 23, 1973.
Ms. Annamay T. Sheppard, and Mr. Dickinson R. Debevoise, attorneys for respondents J. Michael Callan, Harris David and Gerard J. Clark (erroneously named Gerald J. Clark).
Mr. Joseph P. Lordi, Essex County Prosecutor (Mr. Ralph Fusco, Jr., appearing).
KIMMELMAN, J.S.C.

I

BACKGROUND
On November 21, 1972 Superior Court Judge Herbert ordered J. Michael Callan, Harris David and Gerald J. Clark to show cause why they should not be adjudged guilty of contempt of this court by reason of their conduct in an action entitled Newark Housing Authority v. Toby Henry, et al., Docket No. C-1640-70, then pending before Judge Herbert. Callan, David and Clark are attorneys on the staff of the Newark-Essex Joint Law Reform Project which is an agency established to furnish legal services to the indigent. David and Clark are members of the bar of this State; Callan is a member of the bar of the State of New York and was specially admitted for the purpose of the Newark Housing Authority (hereinafter "N.H.A.") case. All three attorneys represented defendants in the N.H.A. case.
*483 That action was instituted by the N.H.A. (a) to require the defendants to account for moneys allegedly paid to them by tenants of the Stella Wright housing project, the payments having been made as a substitute for rent payments to the N.H.A., and (b) to enjoin defendants from promoting and participating in the rent strike. Defendants answered and counterclaimed, citing deplorable and unsanitary conditions at the project as justification for their actions. As noted by Judge Herbert, the rent strike fund, which totaled $94,460.89, was being withheld as a lever to move the N.H.A. toward doing what a good landlord should do.[*]
On February 7, 1972 Judge Herbert refused to order that the rent strike fund be turned over to a receiver but ordered that the fund be retained by defendants in the same place, in the same form and in the same account as theretofore pending further order of the court. Although at that time the rent strike fund was held in various savings bank accounts, it was withdrawn and converted into as many individual money orders as equaled the contribution to the fund made by each tenant. On March 1, 1972 the fund was placed in a safe deposit box at the Fidelity Union Trust Company, American office, in the name of the Stella Wright Tenants Association, under the control of defendants Toby Henry, Thomas Comerford and another person. On March 29, 1972 Judge Herbert again entered an order directing that no funds be withdrawn or removed from the safe deposit box except pursuant to a further order of the court.
Thereafter, by written opinion dated October 12, 1972 which, as all other pleadings in the cause, listed Callan, David and Clark of the Newark-Essex Joint Law Reform Project as appearing for defendants, Judge Herbert concluded that the doctrine of Marini v. Ireland, 56 N.J. 130 (1970), did not entitle the tenants of the Stella Wright Homes to rent-free occupancy but at most may have entitled *484 them to an abatement of rent because of a breach of the landlord's implied warranty of habitability. Addressing himself to the rent strike fund he observed that "The money has been idle too long. It ought to be used for someone's benefit." Judge Herbert then ordered that all tenants who had paid money into the rent strike fund show cause why their contributions should not be turned over to the N.H.A. and to show the basis why they may claim to be entitled to a refund.
The tenants who would be affected by a turn-over of the rent strike fund were duly served with notice and, as scheduled, the matter came on for hearing before Judge Herbert on November 17, 1972.
After the hearing commenced and during the course of argument by counsel for the N.H.A. directed towards the merits of the case, the proceeding was interrupted by Callan who then for the first time informed the court by means of a prepared statement that the subject matter of the hearing, the rent strike fund, had been removed from the safe deposit box and was in the process of being returned to the tenants. Counsel for the N.H.A. immediately decried that action, terming it "a flagrant, brazen and unequivocal defiance of the laws of this country, the laws of this state and the obligation of officers of this court * * *."

II

CHARGE
Cognizant of the aforementioned factors, Judge Herbert cited Toby Henry and Thomas Comerford as well as the three attorneys involved in this proceeding for contempt of court. The matter was assigned to the undersigned for trial. Henry and Comerford each pleaded guilty to the charge and were sentenced to jail for 45 days. Callan, David and Clark were tried before this court commencing on January 5, 1973.
*485
 SUPERIOR COURT OF NEW JERSEY
 CHANCERY DIVISION-ESSEX COUNTY
 DOCKET NO.
 IN THE MATTER OR )
 MICHAEL CALLAN, HARRIS )
 DAVID and GERALD CLARK ) ORDER TO SHOW CAUSE
 charged with Contempt )
 of Court. )
This matter being opened by Brach, Eichler, Rosenberg & Silver and it appearing to the Court from statements and representations made to it in open Court on November 17, 1972 by Michael Callan, Esq. in the presence of and with the knowledge of Co-Counsel Harris David, Esq. and Gerald Clark, Esq., that Toby Henry, Thomas Comerford and Edward Satterfield, named defendants in a certain action entitled Newark Housing Authority vs. Toby Henry, et als., Docket No. C-1640-70, did enter into and remove certain funds contained in Safe Deposit Box #1326 of the Fidelity Union Trust Co., and did distribute part or all of the said funds to other persons in violation of certain orders of this Court dated February 7, 1972 and March 29, 1972, and said orders having been entered after and upon express representations of said counsel for the named defendants made to the Court that said funds would be kept safely subject to further order of the Court, and the named attorneys having undertaken a responsibility as officers of the Court to take all steps within their power to prevent a violation of the said orders and to advise the Court promptly of any intention or disposition to enter upon any such violation so that said funds, totalling more than $94,000.00, could at all times be fully protected from loss or dissipation, and the Court being of the opinion that Harris David, Gerald Clark and Michael Callan may be guilty of contempt of this Court,
It is, on this 21st day of November, 1972, ORDERED that Harris David, Gerald Clark and Michael Callan show cause before this Court, at the Essex County Hall of Records, Newark, New Jersey, on the 28th day of November, 1972, at 9 o'clock in the forenoon, or as soon thereafter as counsel may be heard, why they should not be adjudged guilty of contempt of this Court.
It is further ORDERED that Joseph P. Lordi, Prosecutor of the County of Essex or his duly designated assistant or deputy be appointed to prosecute these proceedings.
It is further ORDERED that a copy of this order be served upon the Prosecutor of Essex County and upon Harris David, Gerald Clark and Michael Callan personally within 3 days from the date hereof.
 /s/ Ward J. Herbert 
 WARD J. HERBERT
 J.S.C.
*486 The essence of the charge and the substance of the contempt tried by this court was twofold: first, that the named attorneys undertook a responsibility as officers of the court to take all steps within their power to prevent the rent strike fund from being removed and disbursed in violation of the court's previous orders; and second, that as officers of the court the named attorneys had a responsibility to advise or notify the court promptly of any intention or disposition of defendants to disburse the fund. Included within the second element of the charge was the failure on the part of the named attorneys to promptly advise the court of the actual removal and disbursement of the rent strike fund when that fact became known to them. The contempt thus charged was criminal in nature since it was concerned with conduct alleged to be directed against the authority or dignity of the court. It involved the element of public injury, and the citation had as its purpose the vindication of the court as a co-equal branch of government. N.J. Dept. of Health v. Roselle, 34 N.J. 331, 340 (1961); In re Bozorth, 38 N.J. Super. 184, 188 (Ch. Div. 1955); Cancellieri v. De Modica, 57 N.J. Super. 598, 603 (Law Div. 1959); see 17 Am.Jur.2d, Contempt, § 78 at 72 (1964); 17 C.J.S. Contempt § 5(1) at 10 (1963). Thus, the attorneys were fairly informed in advance of the trial of the essential elements of the charge against them, In re Tiene, 17 N.J. 170, 180 (1954), and all concerned understood the nature of the charge and the fact that its possible consequences were penal in nature. The trial proceeded on that basis.
As directed by Judge Herbert, the summary contempt procedure was utilized, i.e., there was neither indictment nor trial by jury although the proceeding was plainly penal in nature. Cf. In re Buehrer, 50 N.J. 501 (1967). The presumption of innocence of the named attorneys prevailed and the burden of the prosecution was to prove their guilt on the charge of contempt beyond a reasonable doubt. Buehrer, supra, 50 N.J. at 516.
*487 The responsibility undertaken by the court in the trial of this matter was indeed weighty. In re Mattera, 34 N.J. 259, 272 (1961); N.J. Dept. of Health v. Roselle, supra. Judges must and do appreciate that while the contempt power is to be used sparingly and with judicial self-restraint, it must nevertheless be exercised fearlessly when needed to uphold the dignity of the court and to encourage respect for its orders. McAllister v. McAllister, 95 N.J. Super. 426, 440 (App. Div. 1967); Cancellieri v. De Modica, supra.

III

FINDINGS OF FACT
Within that framework and in accordance with the requisite degree of proof the court has considered, weighed and deliberated upon the evidence and finds the facts as follows:
1. J. Michael Callan, Harris David and Gerald J. Clark are attorneys on the staff of the Newark-Essex Joint Law Reform Project. Together and individually they undertook and entered upon the legal representation of defendants and the Stella Wright Tenants Association in the N.H.A. case.
2. Each of the attorneys was fully aware of the terms of Judge Herbert's orders of February 7, 1972 and March 29, 1972, which required that the rent strike fund was to be held in a safe place and not be disbursed or returned to the tenants, and as of March 29, 1972 each knew that the funds were in a vault at the Fidelity Union Trust Company.
3. Each of the attorneys was fully aware of Judge Herbert's written opinion rendered October 12, 1972, and the order to show cause which followed it returnable November 17, 1972 whereby the defendants and the tenants were ordered to show cause why the rent strike fund should not be turned over to the N.H.A. and why they (the tenants) may be entitled to a refund or abatement.
*488 4. On the afternoon of Monday, November 13, 1972, Callan, David and Clark attended a meeting of the executive committee of the Stella Wright Tenants Association. Defendants Toby Henry and Thomas Comerford were present at the meeting. The purpose of the meeting was to discuss strategy with respect to the rent strike fund and the order to show cause returnable November 17, 1972. The attorneys heard enough at that meeting to indicate to them that the rent strike fund was in imminent danger of being disbursed in violation of the court orders. By reason of what was said they found it necessary then and there to advise the executive committee not to return the money and, further, that such action would constitute a contempt of court and would subject those responsible to up to six months' imprisonment or a fine of not more than $1,000, or both.
5. The executive committee decided to call a general meeting the next evening, November 14, 1972, so that the tenants themselves could have the final say as to the return of the fund. The three attorneys knew that a general meeting was being called. Moreover, defendants Toby Henry and Thomas Comerford had already resolved to return the rent strike fund. They entered the vault at the bank at 9:42 A.M. on November 14, 1972 and withdrew the fund in order to have it available for the general meeting that evening.
6. That evening the tenants by acclamation voted that the funds be returned to them. Accordingly, Henry and Comerford commenced the distribution thereof.
7. According to Comerford's testimony, and I so find, he telephoned one of the attorneys on either November 15 or 16 and advised that the rent strike fund had been withdrawn and was in the process of being returned to the tenants. By reason of his relationship with the three attorneys in their representation of the tenants' association, Comerford was satisfied that notice to one attorney was notice to all three attorneys. Under all of the facts and circumstances of the case, including the attorneys' attendance at the November 13, 1972 executive committee meeting, the preparation of S-16 *489 in evidence, their attendance in court on November 17, 1972, and their preparation of R-1 and R-2 in evidence, I find that Comerford's telephone call to one attorney constituted notice to and knowledge of all three.
8. Regardless of whether notice was received by the attorneys on November 15 or 16, it is clear that the same was received well in advance of the November 17 return date of the pending order to show cause. Following receipt of such knowledge, and prior to the afternoon of November 17, neither Callan, David nor Clark undertook to notify either the court (Judge Herbert) or opposing counsel (William L. Brach, Esq.) that the rent strike fund had been removed and was in the process of being disbursed. I find from their conduct that the decision to forego advance notification prior to the return date in open court was consciously and knowingly made by all three attorneys and not merely by the one who received Comerford's telephone call.
9. Following receipt of the facts conveyed by Comerford's telephone call, the attorneys on either November 15 or November 16 prepared S-16 in evidence, which Comerford testified accurately portrayed the situation. S-16 reads as follows:
This statement has been prepared by us on the basis of information recently made available to us by the association.
We have been authorized by our clients to inform the court concerning certain action taken by the Association with respect to the rent strike fund. As the court is aware, all monies deposited in the strike fund by individual tenants were accepted by the Association with the understanding that they would be kept safe and secure until such time that the several tenants determined that the money should be returned to them.
On or about Friday, November 10, many of the tenants with money in the fund received by mail a notice which directed them to appear before this court today and show cause why their deposit should not be turned over to the Newark Housing Authority. We are informed that upon receipt of this notice, many of the tenants began to fear for the safety of their money.
At this point the Association was in a dilemma. On the one hand, they felt bound as a matter of good faith and personal trust to honor their agreement with each tenant depositor and to comply with a request by a tenant that his money be returned. On the other *490 hand, to comply with such a request and to return the money would be inconsistent with this Court's order to maintain the fund in the same place and in the same form.
Confronted with this problem, the Association undertook to determine the will of the majority of tenants with money in the fund. We are told that the tenants expressed a strong opinion with near unanimity that the fund must be safeguarded by returning it to its rightful owners  the tenants. The reasons given by the tenant body for their decision were as follows:
1. It was felt that the money belonged to the tenants who had paid it in and not to the NHA; for it was the NHA that was responsible for the intolerable conditions which led to the strike in the first instance.
2, It was felt that an order requiring payment of the fund to the NHA would be unjust and unfair to the people with money in the fund.
a. It was felt to be unfair because the NHA has attempted to single out and punish those with money in the fund while taking no action against striking tenants who had no deposits in the fund.
b. It was said to be unfair because of the substantial disparity in the amounts of each tenant's deposit. Payment of the fund to the NHA would penalize those who had been most conscientious and had made the largest deposits in the fund.
c. It would be unfair because the NHA and HUD have taken no meaningful steps to alleviate the intolerable living conditions and have failed to demonstrate any commitment to seeking an effective long term solution to the problems at Stella Wright.
3. It was felt that the question of the strike fund became an obstacle to productive interchange of ideas and common effort toward the basic issue of improved conditions at Stella Wright. It was hoped that the dispute over the fund could be layed to rest and that both the NHA and the tenants could get down to the crucial task of improving the living conditions at the project.
For the reasons just stated and in view of the position expressed by the overwhelming number of tenants, the Association felt compelled to honor the will of the people at Stella Wright. Accordingly, we are informed that the Association has removed the strike fund from the depository to redistribute to the various tenants the full amount of deposits made by such tenants to the fund.
10. By reason of the particular wording of S-16 that "the Association has removed the strike fund * * * to redistribute to the various tenants the full amount of deposits made by (them) * * *" the three attorneys knew as early as November 15 or November 16 that while the rent strike fund had been removed from the vault it had not yet at that time or even *491 on November 17 been completely redistributed to the various tenants.
11. The delay by the three attorneys in conveying notification of the disbursal of the rent strike fund to the court and to counsel was plainly for the knowing purpose of buying sufficient time to enable defendants Toby Henry and Thomas Comerford to complete their wrongful distribution of the funds (money orders) to the various tenants.
12. On the return date of the order to show cause, the afternoon of November 17, 1972, all three attorneys, along with counsel for the N.H.A., conferred with Judge Herbert in his chambers prior to the open court hearing. Although ample time and opportunity was then available and had been all morning, none of the three attorneys saw fit to advise Judge Herbert or opposing counsel that the rent strike fund had been removed and was at that time being dissipated, thereby rendering moot the hearing about to be held in open court.
13. At the conclusion of the conference in chambers Judge Herbert ascended the bench in a court room which, according to S-10 in evidence (the transcript of that day's court proceeding) was jam-packed by the tenants of the Stella Wright project. All seats were occupied and standing tenants lined the walls. After some brief prefatory remarks Judge Herbert inquired: "Who speaks first?" Again, none of the three attorneys who were present made any effort to apprise the court and counsel of that which they well knew. Mr. Brach rose and began to address the court concerning the merits of the application to require the rent strike fund to be turned over to the N.H.A. His remarks took up what now amounts to over three full pages of transcript. He was interrupted while on his feet by J. Michael Callan, who obviously then believed that point in time propitious to read to the court a statement "prepared by us." He then proceeded to read S-16 in evidence.
14. At the conclusion of the reading of the statement counsel for the N.H.A., as heretofore indicated, denounced *492 what he had just heard as "a flagrant, brazen and unequivocal defiance of the laws of this country, the laws of this state and the obligation of officers of the court. * * *"
15. Judge Herbert then noted the waste of the court's time and his own embarrassment over what had occurred with the following remarks:
We came here this afternoon, I thought, insofar as the docket of the Court shows, we came here for the purpose of hearing the parties and trying to reach a determination of the rights of the plaintiff and of the person or persons paying therein, but I find that the defendants, or any of them who were responsible for the safekeeping of this fund, and whom, I must say, I trusted to obey the order of the Court, have not done so, and the fund no longer exists.
I should think that counsel for the defendants, if they have influence with their clients, might well advise them to correct the situation which the defendants have produced, but I see nothing more than we can do this afternoon. I'm very sorry about this.
16. Later that day Harris David prepared and addressed the following communication (R-1 in evidence) to Toby Henry:
 NEWARK-ESSEX JOINT LAW REFORM PROJECT
 463 Central Avenue Newark,
 New Jersey 07107
 (201) 485-3800
 November 17, 1972
 Toby Henry
 254 Prince Street
 Tenant Room 1R
 Newark, New Jersey
Dear Toby:
At the hearing in court Judge Herbert suggested that we use our influence to urge compliance with the court order, and to urge that all steps be taken to retrieve the money distributed from the fund, and to place that money back into the safe deposit box. We strenuously urge that you take all steps necessary to comply with the court order, and to obtain the money distributed, and to place it back in the safe deposit box.
 Very truly yours,
 /s/ Harris David
 Harris David
 cc: The Honorable Ward Herbert
 William Brach, Esq.
*493 17. On November 28, 1972 all three attorneys prepared and addressed the following communication (R-2 in evidence) to the tenants' association and the individual defendants:
 NEWARK-ESSEX JOINT LAW REFORM PROJECT
 463 Central Avenue Newark,
 New Jersey 07107
 (201) 485-3800
 November 28, 1972
 Stella Wright Tenants Association
 254 Prince Street
 Apt. 1R
 Newark, New Jersey
 To: Stella Wright Tenants Association
 Toby Henry
 Edward Satterfield
 Thomas Comerford
Reference is made to the Order to Show Cause issued by Hon. Ward J. Herbert on November 21, 1972, directing the above-mentioned defendants and their counsel to take certain action specified therein concerning monies removed from a safe deposit box maintained by the Stella Wright Tenants Association.
As you know, we have previously advised both orally and by correspondence dated November 17, 1972 that all parties affected by the foregoing Order comply therewith to the fullest extent. Here again we reaffirm this advice and strongly urge that any and all steps necessary to ensure full compliance with the Order be undertaken promptly.
 Very truly yours,
 /s/ Harris David
 By JMC
 /s/ J. Michael Callan
 /s/ Gerald J. Clark
18. Neither communication, i.e., R-1 or R-2 in evidence, had or has the effect of lessening or in any way detracting from what had theretofore occurred.
All of the foregoing facts and the inferences I have drawn therefrom have been found by me as trier of the facts beyond a reasonable doubt from the proofs adduced.

*494 IV

LAW
The court is next required to evaluate and judge those facts within the structure of what the law defines to be a contempt.
A contempt is a disobedience of the court by acting in opposition to its authority, justice and dignity. It comprehends any act which is calculated to or tends to embarrass, hinder, impede, frustrate or obstruct the court in the administration of justice, or which is calculated to or has the effect of lessening its authority or its dignity; or which interferes with or prejudices parties during the course of litigation, or which otherwise tends to bring the authority and administration of the law into disrepute or disregard. In short, any conduct is contemptible which bespeaks of scorn or disdain for a court or its authority. In re Bozorth, 38 N.J. Super. 184, 188 (Ch. Div. 1955); In re Clawans, 69 N.J. Super. 373 (App. Div. 1961), cert. den. 36 N.J. 296 (1962); 17 Am Jur.2d, Contempt, § 3 at 6 (1964); 17 C.J.S. Contempt § 2 at 5, § 25 at 66 (1963).

V

DECISION
Upon applying the law to the facts it clearly appears that the conduct of Callan, David and Clark was contemptuous.
(a) As of November 15 or November 16 the three attorneys had definite knowledge that defendants Toby Henry and Thomas Comerford had invaded the safe deposit box at the Fidelity Union Trust Company and were in the process of disbursing the funds to the various tenants in violation of a court order. Had they acted promptly to notify court and counsel, steps could have been taken to prevent a further dissipation of the funds. They elected to allow the pending litigation to be prejudiced. They allowed and even countenanced *495 a continuing violation of a court order. The court and counsel were entitled to act in reliance upon the reasonable belief that the lawful orders of the court would not be violated; nevertheless, the three attorneys suffered court and counsel to labor under a misapprehension of the true facts. They aided and abetted the continued contempt of Henry and Comerford. In short, not only did they participate in the commission of a fraud upon the court and counsel but their conduct itself was fraudulent and deceitful.
(b) As of November 17 all their wrongful conduct continued as aforesaid and was aggravated by their willingness to disrupt the court's calendar by permitting a moot proceeding to be commenced. The most glaring and aggravating circumstance of their behavior was their unwillingness to reveal that the rent strike fund had been violated until such time as it appeared to them to be a dramatic moment for disclosure before a packed courtroom. Very clearly, they demeaned the court, counsel and even themselves. At a crucial moment in the history of the pending litigation they made a mockery of the proceeding to the laughter, cheers and applause of the spectators, as the stenographic record unhappily shows.
I find all of the foregoing to be conduct constituting contempt within both the letter and spirit of the order to show cause which is the charging document in this proceeding. Beyond that, their conduct would appear to violate the following Disciplinary Rules of the Code of Professional Responsibility of the American Bar Association as adopted by the New Jersey Supreme Court: DR 1-102(A)(4), (5); DR 7-102(A) (1), (7); DR 7-102(B) (1), and DR 7-106(C) (6).
In defense of their behavior it is urged that Callan, David and Clark, who did not take the stand in their own defense, were bound to observe the attorney-client privilege, Evidence Rule 26, and thus could make no disclosure to court or counsel concerning the activities of Toby Henry and Thomas Comerford. The privilege, however, does not extend *496 to a communication in the course of legal service sought or obtained in aid of the commission of or furtherance of a crime or a fraud. Evidence Rule 26(2) (a); McCormick, Evidence, § 99 at 200 (1954); 8 Wigmore, Evidence, § 2298 at 572 (McNaughton rev. 1961). No one rationally expects the law to protect from disclosure a deliberate plan to defy the law and deprive another party of his rights whatever the precise nature of those rights may be.
There can be no doubt that Comerford's telephone call to counsel put them on notice that Comerford and Henry were in the process of the commission of a fraud upon the court, counsel and the N.H.A. The telephone call was sufficiently extensive to enable counsel to record all of the detailed information which counsel then translated into a typewritten statement now known as S-16 in evidence. The preparation of the statement for future use only at the opportune moment was the legal service which was sought by the client and rendered by the attorneys in aid of the commission of an ongoing fraud. The telephone call to the attorney was not in furtherance of legitimate purposes which are protected by the scope of the privilege but was a frank disclosure of what was happening in the commission of a continuing wrong.
Confederating with clients to allow court and counsel to labor under a misapprehension as to the true state of affairs; countenancing by silence the violation of a court order and aiding and abetting the continued contempt of another, are all frauds within the meaning of Evidence Rule 26(2) (a). There is no reason to believe that the use of the word "fraud" in that rule is to be limited to conventional notions of tortious frauds. Acts constituting fraud are as broad and as varied as the human mind can invent. Deception and deceit in any form universally connote fraud. Public policy demands that the "fraud" exception to the attorney-client privilege as used in Evidence Rule 26 be given the broadest interpretation.
*497 The conduct of the participants here sharply dispells any right to claim the attorney-client privilege. Professor McCormick states:
Since the policy of the privilege is that of promoting the administration of justice, it would be a perversion of the privilege to extend it to the client who seeks advice to aid him in carrying out an illegal or fraudulent scheme. Advice given for such a purpose would not be a professional service but participation in a conspiracy. [McCormick, op. cit., § 99, at 200-201]
While the claim of lawyer-client privilege clearly belongs to the client, the privilege pales and loses the law's protection in the face of a client's fraudulent object or purpose. In the Matter of Stein, 1 N.J. 228, 236 (1949); In re Selser, 15 N.J. 393, 406 (1954). Comerford and Henry having thus lost the privilege, it was of no avail to the three attorneys. Obviously, an attorney's duty of good citizenship ought to heavily outweigh his fidelity to clients whose actions have proved themselves unworthy of that faith. The comment of the Supreme Court in Stein has particular significance here:
Where there is revelation of a fraud about to be perpetrated upon a Court, of which an attorney is an officer, there is a definite obligation upon and we conceive it to be the duty of that attorney to communicate and make a full disclosure of such to the Court * * * [1 N.J. at 236]

VI

CONCLUSION
In conclusion, it must be strongly emphasized that the courts and the public are entitled to the highest standard of conduct on the part of members of the bar. As officers of the court assisting it in the exercise of its jurisdiction and the performance of its functions, attorneys owe to the court the duty of greater fidelity and respect than is expected of litigants. I can understand but not condone the outrageous behavior of Toby Henry and Thomas Comerford. I cannot *498 begin to comprehend similar behavior on the part of the three attorneys. They completely lost touch with the reality of the situation. As attorneys they turned their backs on the court and have rebuffed the very forum and institution of government which in recent years has been singular in extending its aid and protection to that very segment of society which Callan, David, Clark and the Newark-Essex Joint Law Reform Project here represented.
For all of the foregoing reasons I find J. Michael Callan, Harris David and Gerald J. Clark guilty of contempt of court as charged. The Prosecutor of Essex County is directed to draw an appropriate judgment of conviction. Callan, David and Clark are directed to appear before me at 9 A.M. on February 8, 1973 for sentencing.
NOTES
[*] Written opinion dated October 12, 1972.