167 N.J. Super. 578 (1979)
408 A.2d 1345
NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES, PLAINTIFF-APPELLANT,
v.
VIRGINIA WUNNENBURG AND BRUCE WUNNENBURG, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 1979.
Decided November 30, 1979.
*580 Before Judges ALLCORN, MORGAN and HORN.
Erminie L. Conley, Assistant Attorney General, argued the cause for appellant (John J. Degnan, Attorney General of New Jersey, attorney; Erminie L. Conley, of counsel; Gaby Gross, Deputy Attorney General, on the brief).
Arnold Robinson, argued the cause for respondents (Greenberg & Robinson, attorneys).
*581 The opinion of the court was delivered by MORGAN, J.A.D.
In 1977 respondents Bruce and Virginia Wunnenburg were deemed unfit parents and parental ties with their three children were, accordingly, terminated. N.J. Div. of Youth & Fam. Serv. v. Wunnenburg, 149 N.J. Super. 64 (J.D.R.Ct. 1977), aff'd 169 N.J. Super. 417 (App.Div. 1979). The evidential foundation for this serious action can be found in the cited opinions and we will not burden this opinion with repeating it. For present purposes it is sufficient to recount the summary of the trial court's ultimate findings in that 1977 litigation:
From the facts above and other clear, convincing, and credible testimony offered at trial, as well as the court's observations of Virginia Wunnenburg, I find that the State has clearly established that Virginia Wunnenburg is incapable of caring for children.

The testimony is further clear and convincing that Bruce Wunnenburg is unlikely and unwilling to change his negative and uncompromising attitude against accepting supportive community services. Without such services it is clear that Virginia Wunnenburg could not properly care for one child, let alone three.
It is equally clear that the Wunnenburgs have failed to demonstrate any sincere interest in or affection for their children....

This court finds as a fact that Brenda's and Cynthia's health was endangered while residing with their parents, and that Brenda's entire development, both physical and emotional, was in fact impaired, which finding is predicated upon uncontradicted medical testimony offered at trial. [149 N.J. Super. at 75; emphasis supplied]
On appeal the foregoing findings were affirmed as being "eminently correct." 169 N.J. Super. at 420.
It is, however, the fourth child, Michael, born to the Wunnenburgs after the above-quoted findings were made, presently a little over a year old, who is the focus of the present appeal. On November 2, 1978, about two months after Michael's birth, two caseworkers from the Division of *582 Youth and Family Services (DYFS) arrived unannounced at the Wunnenburgs' home for an investigation and were denied entrance. Rebuffed, DYFS, pursuant to N.J.S.A. 30:4C-12, applied to the same trial judge who decided the 1977 matter for an order compelling the Wunnenburgs to cooperate in its investigation into Michael's circumstances within the Wunnenburg home. After hearing testimony from one of the two caseworkers who were denied entry, the trial judge denied DYFS the order it requested concluding that (1) to obtain the desired order, DYFS was required to show probable cause to believe that respondents were neglecting or abusing Michael; (2) the findings in the 1977 litigation were too remote to establish such probable cause, and (3) because contemporary facts supportive of DYFS' requested order were absent, DYFS' application would be denied without prejudice. DYFS appeals. We reverse.
The enactment governing disposition of the present controversy is N.J.S.A. 30:4C-12 which, in essence, authorizes, and indeed requires, DYFS to investigate all information received concerning the neglect or abuse of any child. The critical statutory language continues as follows:
If the parent, parents, guardian, or person having custody and control of the child shall refuse to permit or shall in any way impede investigation, and the [Division] determines that further investigation is necessary in the best interests of the child, the (Division) may thereupon apply to the Juvenile and Domestic Relations Court of the county where the child resides, for an order directing the parent, . .. to permit immediate investigation. The court, upon such application, may proceed to hear the matter in a summary manner and if satisfied that the best interests of the child so require may issue an order so requested.
The statutory design is clear. DYFS first determines, for itself, whether the child's best interests demand further investigation. In this matter it obviously did so and concluded from the evidence in the 1977 litigation concerning *583 these parents and the trial judge's findings that assurances as to Michael's physical development and emotional well-being were required. The statute does not, however, make DYFS' decision in this matter conclusive on the parent. If the parent resists investigation, DYFS is required to apply to the court for an order compelling parental cooperation and the court must itself determine whether the child's best interests require investigation. Hence, the statutory design interposes the court between nonconsenting parents and official authority, thereby accomplishing many of the objective[s] sought to be obtained by requiring the traditional search warrant. See Marshall v. Barlow's Inc., 436 U.S. 307, 324, 98 S.Ct. 1816, 56 L.Ed. 2d 305, 317-318 (1978). Doubtless, the Legislature was aware that many, if not most, DYFS investigative efforts would intrude on the privacy of the family relationship and would involve injecting a caseworker into the family home. It was for this reason, however, that neutral court action was required in determining whether such an intrusion was reasonable in the given circumstances The court authorizes the intrusion if, in the statutory language, it is satisfied that "the best interests of the child so require."
It is clear that the statute provides the standard guiding issuance of orders compelling parental cooperation in DYFS investigative endeavors and equally clear that the trial judge failed to apply it. Instead, with understandable concern over the necessary invasion of the parent's privacy interests, he undertook a balancing of the parent's privacy interest with the interests of the child in being free from abuse, mistreatment and neglect and concluded that reconciling those interests required him to import from the realm of criminal law the concept of probable cause to believe that the child is being neglected or abused as the standard determination when the parent's privacy interest is to be sacrificed. In so doing, he overlooked that the Legislature *584 had already balanced those interests with the result to be found in the statute he was applying. Quite obviously, the Legislature concluded that where a child's best interests required, the parent's privacy interest yields. We found no authority holding that the Legislature could not so constitutionally provide. None has been cited by the parties.
That the intrusion into respondents' home is properly to be regarded as a search, does not by itself require that the standard guidelines of judicial authorization for the intrusion be one of probable cause to believe that the child is being abused or neglected on the premises to be searched. Judicial authorization for various kinds of administrative searches as distinguished from police searches designed to uncover evidence or fruits of crime have been permitted on bases other than probable cause to believe that a crime has been committed on the premises to be searched. Justice Douglas, in a dissenting opinion which, contrary to the majority in Frank v. Maryland, 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959), would have upheld the search warrant requirement as a condition to a health inspector's entry into a home, a position which later became law in Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), said:
This is not to suggest that a health official need show the same kind of proof to a magistrate to obtain a warrant as one must who would search for the fruits or instrumentalities of crime. Where considerations of health and safety are involved, the facts that would justify an inference of `probable cause' to make an inspection are clearly different from those that would justify such an inference where a criminal investigation has been undertaken. Experience may show the need for periodic inspections of certain facilities without a further showing of cause to believe that substandard conditions dangerous to the public are being maintained. The passage of a certain period without inspection might of itself be sufficient in a given situation to justify the issuance of a warrant. The test of `probable cause' required by the Fourth Amendment *585 can take into account the nature of the search that is being sought.... [359 U.S. at 383, 79 S.Ct. at 817, 3 L.Ed.2d at 891-892]
Justice Douglas' approach, in Frank v. Maryland, supra, was more recently used as the source of the views expressed in Marshall v. Barlow's Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), holding a search warrant necessary for entry into business premises by an OSHA[1] inspector looking for safety violations. The basis for the issuance of the warrant was described, however, in the following terms:
Whether the Secretary proceeds to secure a warrant or other process, with or without prior notice, his entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises. Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that `reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular (establishment).... [Id. 436 U.S. at 320, 98 S.Ct. at 1824, 56 L.Ed.2d at 316]
In our view, the proposed DYFS entry into the Wunnenburg home for assurances as to the safety and health of Michael Wunnenburg is one being conducted according to "reasonable standards." Id. A court's satisfaction that Michael's best interests would be served by such an intrusion provides the Wunnenburgs with the guarantee that the decision to search "is justified by a reasonable governmental interest." Camara v. Municipal Court, 387 U.S. at 539, 87 S.Ct. at 1736, 18 L.Ed.2d at 941. Such a determination squares with state and federal constitutional mandate.
The fundamental reason, however, for the trial judge's refusal to order parental cooperation with DYFS' *586 investigation was the perceived remoteness of the prior adjudication of parental unfitness which provided both the motivation for the intrusion and the evidence of its necessity. According to the trial judge, an adjudication of parental unfitness found 22 months before the entry, even when that adjudication includes a prediction of future unfitness circumstances, is an insufficient basis for authorizing an investigation of an afterborn child. We vigorously disagree. Parental unfitness is a personal characteristic which, ordinarily, does not vanish overnight, or even within weeks or months. An inference that such a quality persists, in the absence of any evidence that it does not, is not unreasonable. Brinson v. Hernandez, 24 N.J. 391 (1957). This is particularly true when the inference merely provides the basis of an investigation, not a severance of parental rights. As DYFS quite properly argues, a prior adjudication of unfitness may even be of such a character as to, by itself, provide an adequate basis for severance of parental rights. See J. & E. v. M. & F., 157 N.J. Super. 478, 493 (App.Div. 1978). In the absence of countervailing evidence, evidence of unfitness 22 months before the entry based upon the facts of unfitness found in that prior adjudication provides a more than sufficient justification for an investigation of the child's circumstances.
The trial judge's fears that the Wunnenburgs are forever to be exposed to DYFS intrusions into their personal life are exaggerated. Respondents are at all times free to adduce evidence of changed circumstances. See, e.g., Forrester v. Livingston, 216 Ga. 798, 120 S.E.2d 174 (Sup.Ct. 1961). They have not done so in this case.
Children are uniquely circumstanced. They are by their very nature helpless beings who depend entirely upon their parents for nourishment, care, and emotional security. Enactments such as N.J.S.A. 30:4C-12 are designed as measures for their protection when the parents fail in that task or when it is reasonably feared that they have done so. *587 Such is the underlying rationale for the investigative duty imposed upon DYFS. It is not unreasonable to fear for the health and welfare of an infant of a mother who, 22 months previously, had been declared by a trial judge to be "incapable of caring for children," to such an extent that the health of two of her other children had in fact been impaired. Such considerations fully justify, as a matter of law, issuance of the requested order.
Reversed and remanded to the trial court for further proceedings consistent with this opinion.
NOTES
[1] Occupational Safety and Health Act.