212 N.J. Super. 476 (1986)
515 A.2d 799
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GLENN ROBERTS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted August 12, 1986.
Decided September 24, 1986.
*478 Before Judges DEIGHAN and SCALERA.
Alfred A. Slocum, Public Defender, attorney for appellant (Fredrick P. Niemann, Designated Counsel, of counsel and on the letter brief).
W. Cary Edwards, Attorney General of New Jersey, Attorney for respondent (Carol M. Henderson, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by DEIGHAN, P.J.A.D.
Pursuant to a plea agreement, defendant Glenn Roberts was convicted for contempt in violation of N.J.S.A. 2C:29-9, a crime of the fourth degree, for purposely or knowingly disobeying a judicial order. He was sentenced to a term of one year probation on condition that he serve 69 days in the county jail with credit for time previously served.[1] Probation was also on condition that defendant make restitution to the County of Cumberland in the amount of $1,572.19, the cost of defendant's extradition from Wyoming. A $25 Violent Crimes Compensation Board penalty was also imposed. At the time of the plea *479 agreement defendant reserved his right to appeal from the denial of his motion to dismiss the indictment on the ground that the Superior Court, Law Division lacked jurisdiction over the defendant because, at the time of the offense, he was in fact a juvenile. The facts are not in dispute.
Defendant was indicted by the Cumberland County Grand Jury under Indictment No. 588-78 for breaking and entering in violation of N.J.S.A. 2A:94-1 (count one) and larceny in violation of N.J.S.A. 2A:119-2 (count two). Both violations were committed on August 31, 1978. He was also indicted under Indictment No. 864-79 for larceny committed on June 8, 1979 in violation of N.J.S.A. 2A:119-2. On September 27, 1979 a bench warrant was issued for defendant for failure to appear before the Superior Court, Law Division on Indictment No. 864-79; on October 10, 1980 a bench warrant was also issued for defendant for failure to appear before the court on Indictment No. 588-78.
In 1979, when defendant was arrested and charged with breaking and entering and larceny under the two indictments he was charged as an adult because he lied to the police and said he was 18 years of age. The bench warrant lists defendant's date of birth as August 5, 1960, however, his actual date of birth, which was not established until a motion to dismiss in June 1983, is August 5, 1961. On September 27, 1979, when defendant failed to appear before the court to enter a plea to Indictment No. 864-79 he had left the State and had gone to Oregon allegedly to visit his sick father. However, instead of returning to New Jersey, defendant went to Wyoming where he was again arrested and convicted of breaking and entering and larceny. On April 15, 1983 defendant was extradited to New Jersey from Wyoming and on May 10, 1983 he was indicted under Indictment No. I-0238-5-83 for bail jumping on September 27, 1979 in violation of N.J.S.A. 2C:29-7.
On June 13, 1983, defendant moved to dismiss Indictment Nos. 588-78 (breaking and entering and larceny) and I-0238-5-83 (bail jumping). He argued that he was a juvenile when the *480 offense charged in Indictment No. 588-78 was committed and therefore the court had no jurisdiction over him. He further argued that since he was improperly charged as an adult, Indictment No. I-0238-5-83 (bail jumping) must be dismissed because he had no obligation to appear before the Superior Court, Law Division for the underlying indictment. He thus contends there was no jurisdiction to charge him with bail jumping in violation of N.J.S.A. 2C:29-7. The trial court dismissed Indictment No. 588-78 (breaking and entering and larceny) and transferred the matter to the Juvenile Division for prosecution but denied his motion to dismiss Indictment No. I-0238-5-83 for bail jumping. On July 7, 1983, Indictment No. 864-79 (larceny) was also dismissed and the matter transferred to the Juvenile Court.
On August 4, 1983, pursuant to the plea agreement, defendant retracted his not guilty plea and entered a guilty plea to Indictment No. I-0238-5-83 which was amended to charge him with contempt of court in violation of N.J.S.A. 2C:29-9. At sentencing defendant admitted he was aware that there were criminal charges outstanding against him; that he knew he was not permitted to leave the State without permission, and that he made no attempt to return to New Jersey nor did he inform the court of his whereabouts or make any attempt to ascertain the status of the charges against him.
On appeal defendant contends that since he was a juvenile at the time of the violation, his conviction for contempt must be reversed because the court had no jurisdiction over him on the underlying charge of breaking and entering and larceny. He contends that "a defendant may ignore a court order with impunity if the court issuing the order lacked jurisdiction" citing In re Tiene, 17 N.J. 170, 177 (1954) and cases from other jurisdictions. We disagree.

I.
The general rule is firmly established that a court does not possess the right or power to punish for contempt in *481 disregard or in violation of its order which was entered without jurisdiction over the subject matter or the parties or without power or authority to enter the particular order. Annotation, "Right to punish for contempt for failure to obey court order or decree either beyond power or jurisdiction of court or merely erroneous," 12 A.L.R.2d 1059, § 3 at 1067 (1950). Therefore, even though no appeal has been taken from the underlying action, lack of jurisdiction for violation of an order in that action may be raised by a contemnor on appeal from a judgment of conviction on the collateral contempt proceeding or upon application for a writ of habeas corpus to test the validity of the contempt. Ibid. In other words, on a criminal contempt conviction based upon violation of a court order, in this case an order for bail, lack of jurisdiction of the original order may be raised on appeal from the contempt conviction.
The annotation, which cites a plethora of cases from other jurisdictions, is cited with approval in Tiene, 17 N.J. at 178, but reference to the annotation is dictum because the Supreme Court found that the trial court had jurisdiction and affirmed the contempt. Tiene was a criminal contempt proceeding. 17 N.J. at 177, 181. A distinction must be made between "criminal" contempt, which is a proceeding to maintain the dignity of the court, and a "civil" contempt, which is a proceeding merely to compensate the plaintiff for damage suffered by way of defendant's violation or disregard of the order. 12 A.L.R.2d, § 5 at 1077. Although the New Jersey Court Rules distinguish between criminal and civil contempt,[2] generally our case law *482 has not made this distinction. Most New Jersey cases, with the exception of Tiene, appear to have involved "civil" contempt. Kempson v. Kempson, 63 N.J. Eq. 783, 784 (E. & A. 1902); Dodd v. Una, 40 N.J. Eq. 672 (E. & A. 1885) (cited in Tiene); Salmon v. Salmon, 88 N.J. Super. 291, 314 (App.Div. 1965); Forrest v. Price, 52 N.J. Eq. 16, 23 (Ch. 1893), aff'd 53 N.J. Eq. 693 (E. & A. 1902).
This distinction between "civil" and "criminal" contempt is important because other courts have recognized an exception to the general rule. In "criminal" contempt proceedings, to maintain the dignity of the court and to preserve existing conditions pending a determination of the court's jurisdiction, a court order must be obeyed until the jurisdictional question may be determined. Annotation, supra, 12 A.L.R.2d, § 5 at 1077, citing United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947).
In United Mine Workers, the United States Supreme Court held that a District Court's order must be obeyed if it had the power to decide whether it was authorized to issue it, even if it is later held that it was not so authorized. The court distinguished between criminal and civil contempt and determined that if there is criminal contempt and the order is later set aside for lack of jurisdiction, the contempt conviction will not fall. Id. at 292-296, 67 S.Ct. at 695-697.
Orders outstanding or issued after [the injunction] were to be obeyed until they expired or were set aside by appropriate proceedings, appellate or otherwise. Convictions for criminal contempt intervening before that time may stand. [Id. at 294, 67 S.Ct. at 696; Emphasis supplied].
Accord LaTrobe Steel Co. v. United Steel Workers, etc., 545 F.2d 1336 (3 Cir.1976); United States v. Professional Air Traffic Controllers, etc., 524 F. Supp. 160, 165 (D.D.C. 1981); see Norman Bridge Drug Co. v. Banner, 529 F.2d 822, 827 (5 Cir.1976); but cf. United States v. Thompson, 319 F.2d 665, 668 (2 Cir.1963) (mandate which is beyond jurisdiction of issuing court is void and court may not punish for its violation). This exception is applicable even if the underlying order is later *483 found to have infringed on constitutional rights. Norman Bridge Drug Co. at 827. The rationale for this exception is stated in United States v. Shipp, 203 U.S. 563, 573, 27 S.Ct. 165, 166, 51 L.Ed. 319 (1906): "Until [the court's] judgment declining jurisdiction should be announced, it had authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition [for a writ of habeas corpus]."
Although the New Jersey Courts have not distinguished between "criminal" and "civil" contempt in relation to jurisdiction of the original proceedings, there is some support for such a distinction in the concurring opinion of Dodd v. Una, supra. In Dodd, upon which the Tiene court relied, the majority stated that a party in a contempt proceeding may question the jurisdiction of the court to enter the order alleged to have been disobeyed. Id. 40 N.J. Eq. at 706. The majority opinion expressly noted that the decision did not involve "criminal" contempt but rather a "civil" contempt and stated: "To avoid any misapprehension, it is proper to say that [this opinion has not considered] the question whether the court below, of its own motion, and to vindicate its own dignity, could have punished appellant for violation of its unreversed order." Id., 40 N.J. Eq. at 714. Although the terms are not used, the concurring opinion distinguished between "civil" and "criminal" contempt and implied that in "criminal" contempt a jurisdictional defect in the original proceeding will not defeat jurisdiction in the subsequent contempt proceeding. Id. at 714, 718 (Depue, J. concurring).
The continuing jurisdiction in criminal contempt is analogous to a situation where a perjury was committed during the course of a trial over which the court had no original jurisdiction. In such a situation "[i]t is a well-established general rule that perjury cannot be charged with respect to false testimony in an action or proceeding before a court which had no jurisdiction over the person or subject matter," citing Annotation, "Offense of perjury as affected by lack of jurisdiction by court or *484 governmental body before which false testimony was given," 36 A.L.R.3d 1038, 1041-42 (1971). The annotation cites, together with a legion of cases, State v. Lawson, 98 N.J.L. 593 (Sup.Ct. 1923), aff'd 100 N.J.L. 185 (E. & A. 1924).
However, again there is an exception to this general rule as illustrated in State v. Buchanan, 79 Wash.2d 740, 489 P.2d 744 (1971). There the defendant, who was arrested for larceny, was tried by a juvenile court. He testified under oath during a preliminary hearing before the juvenile court that he was 17 when in fact he was an adult. He was later convicted of perjury and argued on appeal that since he was an adult, the juvenile court had no jurisdiction to administer the oath. He therefore maintained that he could not be guilty of perjury. Id. at 742, 489 P.2d at 745. The court affirmed the conviction and stated that "while a court may not have jurisdiction to proceed to judgment, it may have jurisdiction to take cognizance of a case in the first instance and until the facts showing lack of jurisdiction appear." Ibid., quoting Annotation, "Offense of perjury as affected by questions relating to jurisdiction of court before which testimony was given," 82 A.L.R. 1127, 1138 (1933). See also Annotation, 36 A.L.R.3d, supra at 1040, 1045, which states that defects sufficient to invalidate a judgment on review but which are developed dehors the record in the procedure, do not preclude a subsequent conviction for perjury in the former trial.
In the present case, no jurisdictional defect was apparent on the face of the proceedings. Defendant misrepresented his age and both the court and the prosecutor, relying upon this misrepresentation, assumed jurisdiction of the underlying indictment. Had the defendant been truthful, the court could have, as it subsequently did in fact, transferred jurisdiction to the Family Court pursuant to the New Jersey Code of Juvenile Justice. N.J.S.A. 2A:4A-20. See also N.J.S.A. 2C:4-11. It was not until four years later, May 13, 1983, when defendant filed a motion to dismiss the indictment, that the lack of jurisdiction was brought to the attention of the court and the prosecutor. *485 As stated by the Supreme Court of Washington, in State v. Buchanan, 79 Wash.2d at 743, 489 P.2d at 745:
It would be incongruous to hold that one may perjure [misrepresent] himself as to matters establishing jurisdiction, then escape the consequences of his perjury [misrepresentation] by reason of its falsity.
We therefore hold that where jurisdiction of the trial court is invalid but jurisdiction is assumed because of a misrepresentation by defendant, the intervening contempt conviction for violation of the bail order is nonetheless valid and must be obeyed until jurisdiction of the underlying criminal proceeding is determined to be invalid.

II.
There is another important distinction between "criminal" and "civil" contempt (enforcement of litigant's rights) which renders a criminal contempt conviction valid even where lack of jurisdiction of the original proceeding is alleged. This distinction is the independent nature of criminal contempt proceedings. As stated in Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 444-445, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911):
Proceedings for civil contempt are between the original parties, and are instituted and tried as a part of the main cause. But, on the other hand, proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause. [Emphasis supplied].
Accord Bray v. United States, 423 U.S. 73, 96 S.Ct. 307, 46 L.Ed.2d 215 (1975); Staley v. South Jersey Realty Co., 83 N.J. Eq. 300, 304 (E. & A. 1914); Passaic-Athenia, etc. v. Consolidated, etc., 100 N.J. Eq. 188, 192 (Ch. 1926) ("fatal to the complainant on this proceeding is the failure to make a separate cause instead of a mere proceeding in the suit itself"). See State v. Zarafu, 35 N.J. Super. 177, 182 (App.Div. 1955) (a criminal contempt proceeding has been considered separate from the cause in which the contempt was committed).
The independent nature of criminal contempt proceedings noted in Gompers is the generally accepted rule. Although it is dependent for its foundation upon the proceedings in such cause, a criminal contempt proceeding is generally held *486 to be independent of the cause of action out of which the alleged contempt arose. 17 C.J.S., Contempt, § 62(5) at 156-157, citing Dorrian v. Davis, 105 N.J. Eq. 147, 153 (Ch. 1929) and Passaic-Athenia, etc. v. Consolidated, etc., supra. On the other hand a proceeding for contempt to enforce a remedy in a civil action is a proceeding in that action. 17 C.J.S., supra, § 62(6) at 159.[3]
As stated by Judge Jayne in Swanson v. Swanson, 10 N.J. Super. 513, 521 (App.Div. 1950), aff'd 8 N.J. 169 (1951),
the proceeding inaugurated to determine the guilt or innocence of the accused continues in truth and reality to be a new, independent, and collateral matter, certainly in so far as jurisdiction of the person is required to enable the court to impose a sentence of imprisonment. Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911); Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448 [52 S.Ct. 238] 76 L.Ed. 389 (1932).
Perhaps the most succinct statement on the independence of contempt proceedings from the underlying action is stated in Allison v. State, 243 Ind. 489, 187 N.E.2d 565 (1963). There, the Supreme Court of Indiana, in response to a contention that the trial court had no jurisdiction of the underlying proceeding, stated:
It must first be pointed out that a criminal contempt proceeding is a separate proceeding from the main action out of which it grew. It is in that respect different from a civil contempt proceeding which is filed in and as part of the main action. Therefore, it necessarily follows, a criminal contempt proceeding being a separate proceeding, its jurisdiction is independent of any other cause of action. [Id. at 500, 187 N.E.2d at 570].
Here, the separate indictment, later amended to contempt in violation of N.J.S.A. 2C:29-9, was for bail jumping on September 27, 1979, when defendant failed to appear for trial on the underlying criminal charges. According to defendant's birth certificate, he was born on August 5, 1961 and therefore *487 became 18 years of age on August 5, 1979. Since the indictment for contempt is an independent cause of action and defendant was 18 years of age on the date of the violation, the Superior Court had jurisdiction over defendant and the subject matter. The conviction for contempt on September 27, 1979 is valid.
Affirmed.
NOTES
[1] At sentencing defendant was given credit for 72 days.
[2] Aside from the statutory crime of contempt, our Court Rules provide for "criminal" contempt, R. 1:10-1 to 4 and enforcement of litigant's rights or "civil" contempt, R. 1:10-5. "Criminal" contempt means a public prosecution for the offense and "civil" contempt or more properly stated enforcement of litigant's rights means only a private proceeding for supplemental relief on behalf of the litigant, N.J. Dept. of Health v. Roselle, 34 N.J. 331, 342 (1961), and therefore "criminal" contempt is redundant. Id. at 336-337. However, the terms criminal and civil contempt will be used since other jurisdictions do not necessarily follow this distinction.
[3] Under our Court Rules, R. 1:10-1, a "criminal" contempt is captioned in a separate matter, "In the Matter of Charged with Contempt of Court." The enforcement of litigant's rights is captioned in the underlying proceeding, R. 1:10-5, In re Contempt of Carton, 48 N.J. 9, 20-21 (1966). R. 4:87, now R. 1:10, was amended to change the caption to differentiate between contempt proceedings and enforcement of litigant's rights.