712 A.2d 1286
STATE OF NEW JERSEY, PLAINTIFF, v.
BENTIN BURDIN, DEFENDANT.

Superior Court of New Jersey
Law Division
(Criminal)
Monmouth County

Decided January 23, 1998.

470

\ *Michael J. Wojciechowski*, Asst. Prosecutor for plaintiff.

*Bennett A. Barlyn*, Deputy Attorney General, *amicus curiae*.

\ *John L. Brown, Jr.*, Asst. Deputy Public Defender for defendant.

CHAIET, J.S.C.

This is a motion to suppress evidence found in plain view in defendant Bentin Burdin's home by police executing a court order to search for and seize a firearm pursuant to *N.J.S.A.* 2C:25–28j of the "Prevention of Domestic Violence Act of 1991", *N.J.S.A.* 2C:25–17 to—33 (hereinafter "the Act"). The fundamental issue is whether a search pursuant to the Act can withstand constitutional scrutiny absent a traditional probable cause finding. The secondary issue is whether the municipal court judge in issuing the order complied with *N.J.S.A.* 2C:25–28j.

On March 28, 1997, Denise Schick ("plaintiff"), a Neptune Township resident, signed a domestic violence complaint against defendant, who was her boyfriend. In her complaint, she alleged that defendant had endangered her life "by throwing a brick through her windshield, and in the past chasing her in her vehicle with his vehicle, and making harassing phone calls also in the past." The complaint alleged criminal mischief. There was nothing in the complaint indicating that she was ever threatened with a gun. The complaint indicated that there was a "silver semi-automatic pistol possibly located in [a] cubby hole over defendant's bed." The complaint listed defendant's address as 510 3rd Ave., Apartment 2, Asbury Park, New Jersey.

On March 28, 1997 the municipal court judge "found good cause to believe that plaintiff's life, health and well-being have been and are endangered by defendant's act(s) of violence" and issued a temporary order pursuant to the Act. In the section of the order authorizing the search and seizure of the weapon pursuant to *N.J.S.A.* 2C:25–28j, the municipal judge described the firearm as a "silver semi-automatic pistol" and commanded the officers to search the premises described as 510 3rd Ave., Asbury Park, NJ Apartment 2.

This court held a hearing on September 26, 1997 and Officer Jay Hunter Ellison of the Neptune Township Police Department testified that he and several other officers went to 510 3rd Ave., Apartment 2 to execute the order. They observed the cubby hole as described in the complaint, which was 5' off the floor, directly over a bed. In order to reach the cubby hole, Ellison testified that he moved a pillow so he would not step on it. In moving the pillow, Officer Ellison observed a small quantity of what appeared to be cocaine lying on the bed where the pillow had been. The court found that the discovery of the cocaine was inadvertent and simply incidental to the officer moving the pillow. The gun was not recovered. Defendant was not present during the search. He had been arrested prior to the search and was in custody. Defen-

dant was subsequently indicted for possession of the cocaine and seeks, through this motion, to have the cocaine suppressed.

*N.J.S.A.* 2C:25–28j governs the search in this case. Under *N .J.S.A.* 2C:25–28j:

> Emergent relief may include . . . forbidding the defendant to possess any firearm or other weapon enumerated in subsection r. of *N.J.S.* 2C:39–1, ordering the search for and seizure of any such weapon at any location where the judge has reasonable cause to believe the weapon is located and any other appropriate relief. The judge shall state with specificity the reasons for and scope of the search and seizure authorized by the order.

Under the facts of this case, even though plaintiff's complaint indicated where the gun was "possibly" located, this court is satisfied that the municipal judge had "reasonable cause" to believe that a firearm was in defendant's apartment. Any doubt created by use of the word "possibly" was overcome by the specific description given by the plaintiff of the gun and its location. However, there was no probable cause to believe the gun was illegally possessed or that it was evidence of a crime. The plaintiff never indicated that the firearm was used against her in any act of domestic violence.

In the criminal context, a warrant may be issued only on a probable cause showing that would lead a reasonable person to believe that a crime has been committed and that evidence of that crime will be found in a particular place. *In re Martin,* 90 *N.J.* 295, 315, 447 *A.*2d 1290 (1982) (citing *Henry v. United States,* 361 *U .S.* 98, 102, 80 *S.Ct.* 168, 171, 4 *L. Ed.*2d 134, 138 (1959)). The Constitution tells us that searches and seizures must issue on probable cause. *U.S. Const.* amend IV; *N.J. Const.* art I, ¶ 7. Furthermore, the Appellate Division has ruled that:

> [T]he Domestic Violence Act is obviously subject to the Supremacy Clause of Article VI of the United States Constitution, and, therefore, just as obviously subject to the constraints imposed by the Fourth Amendment. The Act is also, of course, subject to the New Jersey constitutional guarantee against unreasonable searches and seizures afforded by *N.J. Const.* art. I, ¶ 7. The authority conferred on law enforcement officers by the Act to determine whether any weapons are on the premises and to seize any weapons observed or learned about that pose a risk of harm to the victim of domestic violence must be construed consistently with both the federal and the state Constitutions.

*State v. Younger,* 305 *N.J.Super.* 250, 258, 702 *A.*2d 477 (App.Div. 1997).

The question, therefore, is whether, absent probable cause, the order in this case can withstand constitutional scrutiny and be upheld as consistent with the Constitutions of the United States and New Jersey?

Searches undertaken to promote important state interests unrelated to the acquisition of evidence of criminality or in furtherance of criminal prosecution are, under appropriate circumstances, permissible under the Fourth Amendment. This principle was addressed in *New Jersey Div. of Youth and Family Serv. v. Wunnenburg,* 167 *N.J.Super.* 578, 408 *A.*2d 1345 (App.Div.1979). In *Wunnenburg,* DYFS workers, acting under statutory authority, sought entry into a home to ascertain the welfare of a child within. The child's parents resisted this entry. The trial judge balanced the parents' privacy interest with the child's interest in being free from abuse and held that DYFS needed probable cause to believe the child was being harmed before an entry and search of the home could take place. *Id.* at 583. The Appellate Division rejected this holding, noting that the Legislature had already balanced the interests at stake. *Id.* at 583, 584. The Appellate Division went on to say:

> That the intrusion into respondents' home is properly to be regarded as a search, does not by itself require that the standard guidelines of judicial authorization for the intrusion be one of probable cause to believe that the child is being abused or neglected on the premises to be searched. Judicial authorization for various kinds of administrative searches as distinguished from police searches designed to uncover evidence or fruits of crime have been permitted on bases other than probable cause to believe that a crime has been committed on the premises to be searched. Justice Douglas, in a dissenting opinion, which contrary to the majority in *Frank v. Maryland,* 359 *U.S.* 360, 79 *S.Ct.* 804, 3 *L. Ed.*2d 877 (1959), would have upheld the search warrant requirement as a condition to a health inspector's entry into a home, a position which later became law in *Camara v. Municipal Court,* 387 *U.S.* 523, 8 [87] *S.Ct.* 1727, 18 *L. Ed.*2d 930 (1967), said:
>
>> This is not to suggest that a health official need show the same kind of proof to a magistrate to obtain a warrant as one must who would search for the fruits or instrumentalities of crime. Where considerations of health and safety are involved, the facts that would justify an inference of 'probable cause' to make an inspection are clearly different from those that would justify such an inference

> where a criminal investigation has been undertaken. Experience may show the need for periodic inspections of certain facilities without a further showing of cause to believe that substandard conditions dangerous to the public are being maintained. The passage of a certain period without inspection might of itself be sufficient in a given situation to justify the issuance of a warrant. The test of 'probable cause' required by the Fourth Amendment can take into account the nature of the search that is being sought...[359 *U.S.* at 383, 79 *S.Ct.* at 817, 3 *L.Ed.2d* at 891–892].

*Id.* at 584, 408 *A.2d* 1345.

The Legislature spoke clearly when it enacted "The Prevention of Domestic Violence Act of 1991." *N.J.S.A.* 2C:25–18 provides, in pertinent part, as follows:

> The Legislature finds and declares that domestic violence is a serious crime against society; that there are thousands of persons in this State who are regularly beaten, tortured and in some cases even killed by their spouses or cohabitants; that a significant number of women who are assaulted are pregnant; that victims of domestic violence come from all social and economic backgrounds and ethnic groups; that there is a positive correlation between spousal abuse and child abuse; and that children, even when they are not themselves physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence. It is therefore, the intent of the Legislature to assure the victims of domestic violence the maximum protection from abuse the law can provide.

■ "Protection of the victim [is] the clear and unequivocal message. Law enforcement personnel and the courts [are] encouraged to insure, indeed charged with insuring, the safety of all victims exposed to actual or potential acts of domestic violence or abuse." *State v. Saavedra,* 276 *N.J.Super.* 289, 292, 647 *A.2d* 1348 (App.Div.1994).

The Act provides various civil and criminal remedies which highlight the judiciary's role in insuring the safety of domestic violence victims. *State v. Solomon,* 262 *N.J.Super.* 618, 621–622, 621 *A.2d* 559 (Ch.Div.1993). In this case, the police were taking steps to remove a firearm from the possession of a person in a potentially dangerous domestic violence situation. Their purpose was not to seek evidence of a crime.

■ Based on the authorities cited above, the court is satisfied that even without the traditional probable cause requirement having been met, the search under the facts and circumstances of

this case passes constitutional scrutiny. A limited police entry is allowed to remove an item of potential danger in the volatile setting of domestic violence, especially when that item is a handgun.

The secondary issue is whether the municipal court judge in issuing the order complied with *N.J.S.A.* 2C:25–28j. The statute requires that "[t]he judge shall state with specificity the reasons for and scope of the search and seizure authorized by the order." The only information the judge had before him was that a "silver semi-automatic pistol" was "possibly located in [a] cubby hole over defendant's bed." Based on that information and the fact that the municipal judge was satisfied that an act of domestic violence (criminal mischief) had occurred, the judge simply stated in his order that 510 3rd Ave., Asbury Park, NJ, Apartment 2, could be searched and the silver semi-automatic pistol seized.

This court finds that the mandates of the statute have been met. The judge in his general finding was satisfied that the plaintiff's life, health and well-being were endangered and that the police could search the apartment for the weapon. Although the information from the plaintiff was that the gun was possibly in the cubby hole, it was not unreasonable for the judge to expand the scope of the search for the weapon to the entire apartment. Considering the strong legislative goal to prevent potential acts of domestic violence, the municipal judge's order was sufficient. In actuality the municipal judge was presented with minimal information and his order could not say much more than it did. The information provided, that defendant possessed a handgun and that it was possibly located in a particular area, was sufficient to trigger a need to eliminate potential danger to the plaintiff. The Act mandated a search for her protection.

The defendant's motion to suppress is denied because the entry by the officers into the apartment was lawful and the contraband observed in plain view could be seized.