809 A.2d 882 (2002)
355 N.J. Super. 250
STATE of New Jersey, Plaintiff,
v.
John MASCULIN, Defendant,
Superior Court of New Jersey, Chancery Division.
July 1, 2002.
(Nicole Sonnenblick, Assistant Prosecutor) for the State of New Jersey (Monmouth County Prosecutor).
Evan F. Nappen, for Defendant.
Before Judges SKILLMAN, CUFF and WINKELSTEIN.
*883 LOCASCIO, J.S.C.
The question, of first impression, presented by the within matter is whether a defendant can be charged with the disorderly persons offense of contempt of court, contrary to N.J.S.A. 2C:29-9(b), for allegedly violating a telephonic domestic violence temporary restraining order issued by a municipal court judge, who failed to comply with R. 5:7A(b) requiring the electronic or longhand recording of the telephonic proceeding. For the following reasons, this court answers this question in the affirmative.
On Sunday, August 26, 2001, at approximately 11:30 a.m., two Colts Neck police officers responded to the home of Kathy Messina. Upon their arrival, the officers found Ms. Messina in the driveway with dark bruises on her face, which were allegedly inflicted by her boyfriend, defendant John Masculin. Ms. Messina explained that, during a heated argument, defendant slammed her head into a car door several times, forcing her to flee into defendant's parents' house. Defendant pursued the victim and, after kicking in a door to gain entry, kicked the victim in the face, attempted to burn her on the stove and with wax from a candle, and threatened to kill her. After defendant left his parents' house, he went to, and locked the victim out of, her home. When Ms. Messina returned to her home, she called the police. En route to police headquarters, to give a formal statement concerning the aforesaid events, the victim saw defendant drive by. When the police and the victim returned to Ms. Messina's home, they found defendant in the driveway. All parties then proceeded to the Colts Neck police headquarters. Defendant had a laceration above his eye and on the inside of his right foot. The victim had bruises all over her face, her back, on her left knee, above her left breast, and on her left outer bicep.
At headquarters, one of the officers aided the victim in filling out a complaint seeking a domestic violence temporary restraining order (TRO). The officer then called the Colts Neck Municipal Court Judge to advise him of the incident and of the bruises he observed on the victim. The judge then spoke to the victim, who reiterated the aforesaid events. Contrary to the requirements of R. 5:7A(b), this proceeding was not recorded, nor were contemporaneous notes taken memorializing the victim's testimony or the judge's factual determinations and order. After completing her testimony, the judge granted the victim's application and directed the police officer to print the judge's name on the TRO, which prohibited defendant, among other things, from having any oral, written, personal or other form of contact with the victim. Before they left police headquarters, both the victim and defendant were given a copy of the TRO, which ordered them to appear, for a final hearing, on August 28, 2001, before a superior court judge.
It is alleged that on August 27, 2001, defendant violated the restraining order by calling the victim's residence three times between 7 a.m. and 7:33 a.m., resulting in the within charge of contempt contrary to N.J.S.A. 2C:29-9(b). On August 28, 2001, following a hearing before the Honorable Norman J. Peer, J.S.C., a final restraining order was granted, which remains in full force and effect.
Upon completing discovery with respect to the August 27, 2001 violation, defendant filed the within motion to dismiss the contempt charge, contending that the municipal court judge's failure to record the proceedings, either electronically or in longhand, prevented a review of the TRO to determine whether or not it was *884 improvidently granted, and therefore invalidates the TRO ab initio.
R. 5:7A(b), which outlines the proper procedure for the issuance of a TRO, absent the victim's appearance before the court, provides that:
A judge may issue a temporary restraining order upon sworn oral testimony of an applicant who is not physically present. Such sworn oral testimony may be communicated to the judge by telephone, radio or other means of electronic communication. The judge or law enforcement officer assisting the applicant shall contemporaneously record such sworn oral testimony by means of a tape-recording device or stenographic machine if such are available; otherwise, adequate long hand notes summarizing what is said shall be made by the judge. Subsequent to taking the oath, the applicant must identify himself or herself, specify the purpose of the request and disclose the basis of the application. This sworn testimony shall be deemed to be an affidavit for the purposes of issuance of a temporary restraining order. A temporary restraining order may issue if the judge is satisfied that exigent circumstances exist sufficient to excuse the failure of the applicant to appear personally and that sufficient grounds for granting the application have been shown. Upon issuance of the temporary restraining order, the judge shall memorialize the specific terms of the order and shall direct the law enforcement officer assisting the applicant to enter the judge's authorization verbatim on a form, or other appropriate paper, designated the duplicate original temporary restraining order. This order shall be deemed a temporary restraining order for the purpose of N.J.S.A. 2C:25-14. The judge shall direct the law enforcement officer assisting applicant to print the judge's name on the temporary restraining order. The judge shall also contemporaneously record factual determinations. Contemporaneously the judge shall issue a written confirmatory order and shall enter thereon the exact time of issuance of the duplicate order. In all other respects, the method of issuance and contents of the order shall be that required by sub-section (a) of this rule. [Emphasis added.]
Defendant contends that his constitutional rights were violated because the municipal court judge failed to conform to the following seven R. 5:7A(b) criteria:
(1) The applicant must provide sworn oral testimony to the judge.
(2) The testimony adduced, telephonically, must be electronically recorded by either the judge or the law enforcement officer, or the judge must make adequate longhand notes.
(3) The applicant must:
a. identify himself/herself to the judge,
b. specify the purpose of the request, and
c. disclose the basis of the application.
(4) The judge must be satisfied that exigent circumstances exist to excuse the failure of the applicant to appear personally.
(5) The specific terms of the order must be memorialized.
(6) The judge must contemporaneously record his factual determinations.
(7) The judge must contemporaneously issue a written confirmatory order.
Considering each of these criteria seriatim, this court makes the following findings:
(1) In view of the May 21, 2002 certification, of the Colts Neck Municipal *885 Court Judge, that on August, 26, 2002 Kathy Messina applied for a TRO and that his procedure, over 14 years as a municipal court judge, is to swear in all TRO applicants, and the August 26, 2002 certification, of Kathy Messina, attached to her TRO application, the evidence establishes that the applicant was duly sworn.
(2) The Colts Neck Municipal Court Judge did not comply with the requirement that the applicant's testimony be recorded.
(3) Based upon the May 21, 2002 certification, of the Colts Neck Municipal Court Judge, and the testimony, at the hearing on the within motion, of Colts Neck Police Officer Mayer, the evidence establishes that Kathy Messina identified herself, specified the purpose of her request, and disclosed the basis of her application.
(4) In view of the fact that August 26, 2002 was a Sunday, sufficient exigent circumstances existed to excuse Kathy Messina's personal appearance before the municipal court judge.
(5) As evidenced by the TRO forming the basis of defendant's within motion, and the testimony of officer Mayer, at the hearing on the within motion, that, pursuant to the municipal court judge's instructions, he printed the judge's name on the TRO under Officer Mayer's signature, the evidence establishes that the terms of the restraining order were memorialized.
(6) The Colts Neck Municipal Court Judge did not comply with the requirement that his factual determinations be recorded.
(7) The Colts Neck Municipal Court Judge did not comply with the requirement that a contemporaneous written confirmatory order be issued.
In view of the above findings, the issue before this court is whether a municipal court judge's failure to properly record a domestic violence telephonic TRO application voids the TRO, ab initio, so as to preclude a contempt proceeding, pursuant to N.J.S.A. 2C:29-9(b), based upon an alleged violation of said TRO.
Defendant, relying upon State v. Whittaker, 326 N.J.Super. 252, 741 A.2d 114 (App.Div.1999), argues that, absent a record, there can be no finding that exigent circumstances existed which would excuse the victim's failure to physically appear before the court at the time the TRO was entered, or that sufficient grounds existed for the issuance of the TRO. In Whittaker, defendant lived in a house with his wife, daughter, son and his son's houseguest. After the son broke his curfew, an altercation ensued between defendant, his son, and the houseguest. Defendant was later charged with several weapons offenses stemming from the altercation. When defendant's wife testified, on behalf of defendant, at his criminal trial, inconsistent statements made in her application for a restraining order were used, over defendant's objection, to impeach her credibility. Defendant argued that the municipal court's failure to comply with the prerequisites of R. 5:7A. precluded the use of defendant's wife's statements. In upholding the use of these inconsistent statements, the court noted that:
[T]he procedures employed by the municipal court judge did not comply with R. 5:7A. Sharon Whittaker testified that she never spoke to the municipal court judge. The police officer who assisted her testified that the municipal court judge did not speak to her, never administered an oath to her, and took no testimony from her. The police officer further testified that the municipal court judge never talks to the applicant for a restraining order. These are serious violations *886 of R. 5:7A and should not occur in the future. Id. at 264, 741 A.2d 114
While this court agrees with the aforesaid admonition that R. 5:7A(b) should be adhered to, the facts of Whittaker are readily distinguishable from the within matter. Whittaker was a criminal case, involving weapons charges, where the standard of proof is beyond a reasonable doubt; a domestic violence TRO proceeding is a civil matter, where the burden of proof is a preponderance of the evidence. Additionally, the Whittaker R. 5:7A(b) omissions were more serious than the Colts Neck Municipal Court Judge's omissions. Specifically, in Whittaker, the applicant for the TRO was not sworn; here she was. In Whittaker, the applicant never spoke to the judge; here she did.
Defendant likens the telephonic issuance of a domestic violence TRO to that of a telephonically issued search warrant. R. 3:5-3(b), governing such warrants, provides:
A Superior Court judge may issue a search warrant upon sworn oral testimony of an applicant who is not physically present. Such sworn oral testimony may be communicated to the judge by telephone, radio or other means of electronic communication. The judge shall contemporaneously record such sworn oral testimony by means of a tape-recording device or stenographic machine if such are available; otherwise, adequate longhand notes summarizing what is said shall be made by the judge. Subsequent to taking the oath, the applicant must identify himself or herself, specify the purpose of the request and disclose the basis of his or her information. This sworn testimony shall be deemed to be an affidavit for the purposes of issuance of a search warrant. A warrant may issue if the judge is satisfied that exigent circumstances exist sufficient to excuse the failure to obtain a written warrant, and that sufficient grounds for granting the application have been shown. Upon approval, the judge shall memorialize the specific terms of the authorization to search and shall direct the applicant to enter this authorization verbatim on a form, or other appropriate paper, designated the duplicate original search warrant. This warrant shall be deemed a search warrant for the purpose of R. 3:5. The judge shall direct the applicant to print the judge's name on the warrant. The judge shall also contemporaneously record factual determinations as to exigent circumstances. If a recording is made, the judge shall direct that the testimony be transcribed as soon as practicable. This transcribed record shall be certified by the judge. The judge shall promptly issue a written confirmatory search warrant and shall enter thereon the exact time of issuance of the duplicate original warrant. In all other respects, the method of issuance and contents of the warrant shall be that required by subsection (a) of this rule.
Although the language of R. 3:5-3(b) is similar to that of R. 5:7A(b), the standard to be applied to searches conducted pursuant thereto are different; a search for evidence of crime requires "probable cause," U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7; a search conducted pursuant to the Domestic Violence Act requires only "reasonable cause." N.J.S.A. 2C:25 28(j). This lesser standard has been held to pass constitutional muster because, rather than being a criminal investigation, "designed to uncover evidence or fruits of crime," it is more comparable to an administrative search "(w)here considerations of health and safety are involved...." State v. Burdin, 313 N.J.Super. 468, 473, 712 A.2d 1286 (Law Div.1998), quoting New Jersey Div. of Youth and Family Serv. v. *887 Wunnenburg, 167 N.J.Super. 578, 584, 408 A.2d 1345 (App.Div.1979). In Burdin, supra, 313 N.J.Super. at 472, 712 A.2d 1286, the court upheld a search for a weapon, authorized by a TRO, even though the court found that:
[T]he municipal judge had "reasonable cause" to believe that a firearm was in defendant's apartment.... However, there was no probable cause to believe the gun was illegally possessed or that it was evidence of a crime. The plaintiff never indicated that the firearm was used against her in any act of domestic violence.
In so holding, the court in Burdin, supra, 313 N.J.Super. at 474, 712 A.2d 1286, set forth the rationale justifying this lesser standard:
"Protection of the victim [is] the clear and unequivocal message. Law enforcement personnel and the courts [are] encouraged to insure, indeed charged with insuring, the safety of all victims exposed to actual or potential acts of domestic violence or abuse." State v. Saavedra, 276 N.J.Super. 289, 292, 647 A.2d 1348 (App.Div.1994).
The Act provides various civil and criminal remedies which highlight the judiciary's role in insuring the safety of domestic violence victims. State v. Solomon, 262 N.J.Super. 618, 621-622, 621 A.2d 559 (Ch.Div.1993). In this case, the police were taking steps to remove a firearm from the possession of a person in a potentially dangerous domestic violence situation. Their purpose was not to seek evidence of a crime.
Rejecting the argument that the Domestic Violence Act's "reasonable cause" standard is unconstitutional, the court, in Burdin, supra, 313 N.J.Super. at 474-75, 712 A.2d 1286 held:
[E]ven without the traditional probable cause requirement having been met, the search under the facts and circumstances of this case passes constitutional scrutiny. A limited police entry is allowed to remove an item of potential danger in the volatile setting of domestic violence, especially when that item is a handgun.
The aforesaid reasoning was recently approved in State v. Johnson, 352 N.J.Super. 15, 38, 799 A.2d 608 (App.Div.2002), where, although the court suppressed marijuana, seized during the course of a search authorized by a domestic violence TRO, because the record was insufficient to establish "that defendant's access to the weapon created a heightened or increased risk of injury to (the victim)," the court reaffirmed that:
Because the reason for issuance of such a warrant is to further the degree of protection provided to the victim of domestic violence based upon an assessment or prediction of future behavior, as opposed to seeking evidence of criminality, "reasonable cause," as opposed to "probable cause," is the barometer by which the appropriateness of the issuance of the warrant is to be judged. [Id. at 39, 799 A.2d 608]
Another significant distinction between a telephonic search warrant, as prescribed by R. 3:5-3(b), and a telephonic TRO, issued pursuant to R. 5:7A(b), is the safeguard provided by the Domestic Violence Act that a superior court judge hold a hearing, at which defendant may testify, within ten days of the TRO. N.J.S.A. 2C:29-25(a). Here, within two days of the issuance of the TRO, another jurist, Norman J. Peer, J.S.C., after a hearing, issued a final restraining order, which would seem to confirm that, although it would appear that defendant's argument, with respect to the Colts Neck Municipal Court Judge's failure to properly record the telephonic proceeding, is a matter of form over *888 substance. Indeed, in view of defendant's concession, at the hearing on the within motion, that defendant had no knowledge of what the municipal court judge did (or did not do) during the course of Ms. Messina's TRO application, defendant was not operating under the assumption that the TRO was invalid when he allegedly violated it.
As noted above, while this court finds that the municipal court judge's failure to properly record the TRO proceeding is contrary to R. 5:7A(b), this procedural deficiency does not permit a defendant to ignore a court order. Rather, the TRO is valid until set aside by a court in a judicial proceeding. In United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), the Court, quoting Howat v. Kansas, 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550 (1922), stated:
[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings. This is true without regard even for the constitutionality of the Act under which the order is issued.
. . . . .
"It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished."
Violations of an order are punishable as criminal contempt even though the order is set aside on appeal, or though the basic action has become moot. (citations omitted.) [Id at 293-94]
The integrity of a TRO has been upheld in spite of a technical violation that was neither willful nor intentional. In State v. Saavedra, 276 N.J.Super. 289, 647 A.2d 1348 (App.Div.1994), the court upheld the trial court's denial of defendant's motion to dismiss a weapons forfeiture action where, as a result of a domestic violence temporary restraining order, a gun was seized and held by the local police department. It was only after defendant was later accused of violating the restraining order that the prosecutor's office learned of the weapon's seizure. The prosecutor's office filed for custody of the weapon within 45 days of learning of the seizure, but 150 days after the police actually seized the gun. The basis of defendant's motion to dismiss was the prosecutor's failure to comply with N.J.S.A. 2C:25-21(d)(2), which requires the State to file a forfeiture action within 45 days of the seizure of the weapon by law enforcement officers. In denying defendant's motion to dismiss, the court noted that:
It would not be surprising to find, for example, that in the zealous enforcement of this Act, there will be weapons seized out of a heightened sense of caution, erring on the side of safety rather than running the risk of being sorry. Again, the prosecutor, through a trained staff, would be able to recognize and discern these situations and deal with them in a responsible way, never however losing sight of the primary objective of the actprotection of the victim. [Id. at 295, 647 A.2d 1348].
In the within matter, at the hearing on defendant's motion, officer Mayer testified that he served defendant with the TRO at 1:45 P.M. on August 26, 2001. Defendant, having no knowledge of any of the aforesaid procedural deficiencies, allegedly violated the TRO on August 27, 2001. So long as the TRO was in existence, and defendant had knowledge of it at the time *889 he allegedly violated its provisions, he can be prosecuted for contempt:
The basic question is whether there was a formal order in effect at the time of the alleged violation. The order and violations of it are conceptually separate from the situations and proceedings that gave rise to the order. If the defendant was subject to the order and violated its terms, he can be found guilty. Cannel, New Jersey Criminal Code Annotated, comment 4 on N.J.S.A. 2C:29-9.
In State v. Roberts, 212 N.J.Super. 476, 515 A.2d 799 (App.Div.1986), the court held that, even though an issuing court lacks jurisdiction, an order is valid until set aside by another court of competent jurisdiction. In Roberts, defendant, after being arrested for breaking and entering, was charged as an adult because he told the police that he was eighteen years old. When defendant failed to appear for an arraignment, a bench warrant was issued. After defendant was again arrested for, and convicted of, breaking and entering and larceny, in Wyoming, he was extradited to New Jersey, where he was indicted for bail jumping. Defendant moved to dismiss the indictment, arguing that he was a juvenile when originally charged, and therefore the Superior Court, Law Division, lacked jurisdiction over him. In disagreeing, the court held that "[i]n `criminal' contempt proceedings, to maintain the dignity of the court and to preserve existing conditions pending a determination of the court's jurisdiction, a court order must be obeyed until the jurisdictional question may be determined." Id. at 482, 515 A.2d 799.
The Roberts indictment was upheld even though it was jurisdictionally defective; here the TRO was not jurisdictionally lacking, but only procedurally defective. In the within matter, had the victim and defendant never: (a) married, (b) lived together, (c) had a child together, or (d) dated, then the TRO would be jurisdictionally defective. N.J.S.A. 2C:25-19(d). However, it is arguable that even that would be insufficient to impugn the validity of the TRO so as to bar a contempt proceeding for a violation thereof. Roberts is more analogous to a fact pattern where a victim, of domestic violence, lied when she said she dated defendant. That is not what happened here. The victim did nothing wrong; the municipal court judge and the local police department acted in error. Such procedural errors, however, should not deprive a victim of the remedies and protections afforded by the Domestic Violence Act.
This court is mindful of the heavy responsibility imposed upon the Family Part in enforcing the Domestic Violence Act, most recently reaffirmed in State v. Johnson, 352 N.J.Super. 15, 31, 799 A.2d 608 (App.Div.2002):
[I]t is the responsibility of the courts to protect victims of violence that occurs in a family or family-like setting by providing access to both emergent and longstanding civil and criminal remedies and sanctions, and by ordering those remedies and sanctions that are available to assure the safety of the victims and the public. N.J.S.A. 2C:25-18.
As we have noted, in Cesare, supra, 154 N.J. at 399, 713 A.2d 390, our Supreme Court has made it clear that "[t]he Domestic Violence Act was intended `to assure the victims of domestic violence the maximum protection from abuse the law can provide[,]'" (quoting N.J.S.A. 2C:25-18 (emphasis added)), and that the Act was meant "`to ensure that spouses who were subjected to criminal conduct by their mates [have] full access to the protections of the legal system.'" (quoting Corrente v. Corrente, 281 N.J.Super. 243, 248, 657 A.2d 440 *890 (App.Div.1995)). By way of further explanation, the Court stated, in pertinent part:
To reach these goals, the Act provides both emergency and long-term civil and criminal remedies and sanctions and encourages the `broad application' of those remedies in the courts of this State. N.J.S.A. 2C:25-18. [Id. at 31, 799 A.2d 608]
While this court does not condone the municipal court judge's failure to comply with the recording requirements of R. 5:7A(b) (indeed this court recommends that, in the future, all municipal court judges be aware of and comply with said rule), this procedural deficiency is insufficient to justify the drastic remedy defendant seeks. To grant defendant's motion to dismiss, on the procedural grounds advanced, would be contrary to the mandate that this court give "broad application" to the Domestic Violence Act, Cesare v. Cesare, 154 N.J. 394, 399, 713 A.2d 390 (1998), would unnecessarily weaken substantively proper domestic violence restraining orders, and would be contrary to the intent of domestic violence legislation, which is to provide immediate relief and protection for victims of domestic abuse.
For the aforesaid reasons, defendant's motion to dismiss the within contempt charge is denied.